UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
WESTERN DIVISION

WILLIS DONALD LOFTON, and
KAREN LOFTON, As Guardians of
Christopher Ashley, A Minor, The Wrongful
Death Beneficiary of
Donna Kaye Ashley, Deceased                                PLAINTIFF


VERSUS                              CIVIL ACTION NO. 5:07cv80-DCB-JMR


ADAMS COUNTY, MISSISSIPPI,
A Political Subdivision Operating the
Adams County Sheriff's Department;
RONNY BROWN, In his Official Capacity
As Sheriff; and JOHN DOES 1 through 5            DEFENDANTS


## OPINION AND ORDER

This matter comes before the Court on defendants' Motion for Summary Judgment [**docket entry no. 51**], defendants' Motion to Strike Designation of Expert - Dave Channell [**docket entry no. 47**], defendants' Motion to Strike Designation of Expert - Stephen Huffman [**docket entry no. 49**], defendants' Motion in Limine to Exclude Testimony of Willis Donald Lofton [**docket entry no. 62**], and defendants' Motion in Limine Regarding Earned Income and Economic Loss [**docket entry no. 63**]. Having carefully considered the Motions, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

## I. BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs in this case are Willis and Karen Lofton ("Plaintiffs"), who are the parents of Donna Kaye Ashley ("Ashley") and the current guardians of Ashley's minor son, Christopher Ashley. The defendants are Adams County, Mississippi, and Ronny Brown, in his official capacity as sheriff of Adams County ("Defendants"). This litigation arises out of events surrounding Ashley's drug-related arrest, detainment and subsequent death.

When the events giving rise to this litigation began, Donna Ashley was an inmate at the Adams County Jail. (Defs.' Mot. Summ. J. Ex. 4 at ¶ 14.) On August 23, 2004, Ashley temporarily was released from custody on medical recognizance when she complained of appendicitis. (Defs.' Mot. Summ. J. Ex. 4 at ¶ 14.) Ashley's mother, Karen Lofton, picked her up from the jail to take her to the hospital. (Defs.' Mot. Summ. J. Ex. 4 at ¶ 14.) However, Ashley did not go to the hospital; rather, Ashley had Karen Lofton take her to her boyfriend's house and then to the Days Inn in Natchez, Mississippi. (Defs.' Mot. Summ. J. Ex. 4 at ¶ 14.)

On August 24, 2004, Officer Cliff Cox ("Officer Cox") of the Metro Narcotics Unit received information that Ashley was staying at the Days Inn with her boyfriend, Cortez Whirl. (Cox Dep. 8:2-11, February 13, 2008.) Officer Cox, along with Major Charles Harrigill ("Major Harrigill") of the Adams County Sheriff's Department, went to the hotel to execute a warrant for Ashley.

(Cox Dep. 8:22-9:13.)  Just prior to knocking on the door, the officers witnessed, through an open curtain, Ashley handling cocaine inside the room.  (Cox Dep. 13:5-14:2; Harrigill Dep. 33:4-7, February 13, 2008.)  The officers knocked on the door and arrested Ashley when she answered approximately 25-30 seconds later, handcuffing her and seating her on the foot of one of the beds.  (Cox Dep. 14:9-15:15; Harrigill Dep. 33:16-34:2.)

The cocaine that Ashley had been handling was on a plate on the bedside table.  (Cox Dep. 15:20-16:7; Harrigill Dep. 34:12-17.)  While awaiting transport to the police station, Ashley lunged toward the plate of cocaine, (Cox Dep. 22:9-26:17,) apparently attempting to knock it off the table.  (Harrigill Dep. 36:12-25.)  After regaining control of her, Officer Cox asked Ashley if she had ingested any of the drug.  (Cox Dep. 26:22-24; Harrigill Dep. 39:13-14.)  Ashley did not answer.  (Cox Dep. 26:25-27:6; Harrigill Dep. 39:15.)  Officer Cox also gave a cursory visual inspection of Ashley's face and mouth for signs of the drug, but he found no evidence that she had ingested any of the cocaine.  (Cox Dep. 27:22-28:23.)  The plate of cocaine appeared undisturbed.  (Cox Dep. 28:24-29:13; Harrigill Dep. 39:16-21.)

Ashley was transported to the station by Deputy Ronnie Coleman.  (Harrigill Dep. 37:25-39:12.)  During the trip, Ashley gave no indication that she had ingested any cocaine.  (Coleman Dep. 25:7-25, February 13, 2008.)

3

At the station, Officer Joy White ("Officer White"), knowing Ashley from prior arrests, looked in on Ashley in the holding cell. (White Dep. 16:2-13, February 13, 2008.)  At that time, Ashley informed Officer White that she had ingested the drug, and that she needed to go to the hospital. (White Dep. 16:20-17:11.)  Officer White informed Mark Gray ("Gray"), the head jailer, of what Ashley had told her.  (White Dep. 18:10-11.)

Gray, who had received an earlier call from Ashley's mother informing him that she may have taken drugs, attempted to contact Major Harrigill to relay to him the information of Ashley's condition.  (Gray Dep. 21:14-23:8, February 13, 2008.)  Major Harrigill went into the holding cell, found Ashley lying on the floor, and called dispatch for an ambulance. (Harrigill Dep. 44:6-48:21.)  Ashley was transported to the hospital where she died the following morning.

On April 19, 2007, the plaintiffs instituted this action, alleging that the defendants are liable under 42 U.S.C. § 1983 for violation of Ashley's Eighth and Fourteenth Amendment rights.  In their complaint, the plaintiffs claim the constitutional violations resulted from an Adams County Sheriff's Department policy which deprives persons in custody of timely treatment for serious medical needs.  (Compl. ¶ XV-XVI.)

Several filings have been made since the complaint.  On June 13, 2008, the defendants filed a Motion to Strike Designation of

4

Expert Dave Channell.  On June 16, 2008, defendants filed a Motion to Strike Designation of Expert Stephen Huffman and a Motion for Summary Judgment.  The plaintiffs filed their Response on June 30, 2008.  The defendants filed their Reply to the Plaintiff's Response on July 8, 2008.  On July 17, 2008, the defendants filed two Motions in Limine.  The defendants' Motion for Summary Judgment, two Motions to Exclude Expert Designations, and two Motions in Limine now are before the Court.

## II. JURISDICTION

The Court possesses subject matter jurisdiction over the action pursuant to § 28 U.S.C. § 1331.  Specifically, federal question jurisdiction exists since plaintiff seeks recovery under 42 U.S.C. § 1983 and § 1988. (Compl. ¶ 5.)

## III. ANALYSIS

*A. Summary Judgment Standard*

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[1]  The party

---

[1] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

*B. Defendants are Entitled to a Judgment as a
Matter of Law on Plaintiffs' Claim*

Of preliminary note, analysis of this motion need focus only on Adams County as a defendant. Although the plaintiffs filed suit against both Adams County and Ronny Brown, relevant case law provides that a state official, when sued in his official capacity, is not a "person" for the purposes of liability under 42 U.S.C. § 1983. Skelton v. Camp, 234 F.3d 292, 295 (5th Cir. 2000). Rather, courts have construed such actions as being filed only against the entity. Id. Here, since the Plaintiffs filed suit against Ronny Brown in his official capacity as sheriff of Adams County, the case will proceed as though brought only against Adams County.

The determination of Adams County's potential liability begins by examining Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). In Monell, the Supreme Court, for the first time, allowed municipal governments to be subjected to suit under 42 U.S.C. § 1983. Id. at 663. Importantly, although the Monell court acknowledged Section 1983 liability for a municipality, the Court forbade basing liability solely on respondeat superior. Id. at 689. Instead, a plaintiff bringing a Section 1983 suit against a municipality must show an injury that has been caused by "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to be official policy." Id. at 694.

A case with <u>Monell</u>-like facts perhaps is the most obvious occasion to impose municipal liability. In <u>Monell</u>, the Department of Social Services and New York City's Board of Education had enacted a policy requiring pregnant employees to take unpaid leaves of absence before such absences were required medically. <u>Id</u>. at 660-61. The Court determined that since the policy was enacted and enforced by the municipality, the case "unquestionably involve[d] official policy as the moving force of the constitutional violation." <u>Id</u>. at 694.

In the instant case, the alleged constitutional violation did not stem from a policy enacted by Adams County. However, Adams County does have an official policy which addresses the medical needs of a detainee. (Defs.' Mot. Summ. J. Ex. J.) Adams County's procedure instructs that "[j]ailers will notify the Jail Administrator and/or a Criminal Deputy in all cases of a medical emergency. The Jail Administrator and/or Criminal Deputy will, in turn, contact the County Physician and act on his instructions."[2] (Defs.' Mot. Summ. J. Ex. J.) The plaintiffs have not claimed that this policy caused or contributed to the alleged constitutional violation.

Existence of a proper written policy does not automatically

---

[2] Although this policy references sick call and medical procedures for inmates who are housed in the Adams County Jail, both parties appear to consider this policy as controlling from the time Ashley was taken into custody in the hotel room.

absolve Adams County from Section 1983 liability.  In fact, Monell recognizes that a municipality, in some instances, may be liable for the acts of its officials which are fairly attributable to the municipality.  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (citing Monell, 436 U.S. at 694).

The Fifth Circuit Court of Appeals has explained the requirements for holding a county responsible for the acts of its officials.  Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000).  The requirements are (1) "existence of a policymaker;" (2) "a decision by a decision maker that amounts to a policy under Monell and its progeny;" (3) "a decision so deliberately indifferent to the rights of the citizens that the County fairly can be said to be culpable for the injury;" (4) "sufficient causation between the specific policy decision and the resulting constitutional injury;" and (5) an actual constitutional injury. Id.  In order to avoid summary judgment, the plaintiffs must provide sufficient evidence to create a factual issue as to each of these elements.  This, the plaintiffs have not done.[3]

---

[3] A municipality may also be liable for failure to train its officers.  In City of Canton v. Harris, 489 U.S. 378 (1989), city police officers failed to provide an inmate with needed medical care, resulting in her death.  The City of Canton had a policy which placed the discretion to order medical treatment in the jail supervisor.  Id. at 382.  The respondent argued that the city should be liable for failure to adequately train the officers to recognize when medical treatment was necessary.  Id. at 381-82.  Without deciding the city's liability, the Supreme Court stated that liability may exist "where that city's failure to train reflects deliberate indifference to the constitutional rights of

It is unclear precisely which actions the plaintiffs seek to attribute to Adams County. The plaintiffs claim that the individual officers who came into contact with Ashley knew or should have known that she had ingested the cocaine and that they failed to act properly. Additionally, the plaintiffs allege that Major Harrigill failed to follow either the county's written policy or his own unwritten policy that, in times of medical emergency, officers are to first contact an ambulance. In light of applicable case law, the Court interprets the plaintiffs' argument to be that Major Harrigill's decision to transport Ashley directly to jail rather than to a hospital is a decision that is attributable to Adams County for the purpose of Section 1983 liability.[4]

The Court will now consider severally each of the Brown requirements. The Court begins with the first and second requirements — (1) a decision by a policymaker (2) that amounts to a policy under Monell. Id. at 457. In holding a municipality liable for the single act of its official, a court must "'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning

---

its inhabitants." Id. at 392. In the instant case, neither party has raised the issue of failure to train, and no evidence has been provided to suggest that the training program of the Adams County Sheriff's Department was inadequate.

[4] The actions of the other officers would have been relevant in a suit against the officers in their individual capacities. However, as discussed herein, only the acts of policymakers are relevant for the purposes of analyzing municipal liability.

the action alleged to have caused the particular constitutional or statutory violation at issue.'" Gelin v. Housing Authority of New Orleans, 456 F.3d 525, 527 (5th Cir. 2006) (quoting McMillian v. Monroe County, 520 U.S. 781, 784-85 (1997))(emphasis added). Determination of whether a particular actor is a policymaker is a question of state law. Id. (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)). The plaintiffs have not alleged nor have they provided evidence suggesting that Major Harrigill is a policymaker under Monell.

Even assuming Major Harrigill is a policymaker for Adams County, the plaintiffs also must prove that Major Harrigill's decision not to call an ambulance before taking Ashley to jail amounts to a policy or custom under Monell.[5] Brown, 219 F.3d at 457. First, an official policy can be "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making

---

[5] In their Memorandum in Support of Defendants' Motion for Summary Judgment, the defendants characterize the events as an "act or omission," rather than as a municipal policy. As support, they cite to Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), for the proposition that holding a municipality liable for an "episodic act or omission" requires a showing of (1) subjective deliberate indifference by the actor and (2) objective deliberate indifference by the municipality. The analysis in Hare, although similar to Monell, is not applicable here. In Hare, the court was addressing the requirements for qualified immunity of officials sued in their individual capacities, not the requirements for imposing municipal liability. Therefore, the defendants' reliance on Hare is misplaced.

authority." Id. at 457 (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)). Second, official policy also may be "'[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Id. at 457 (quoting Bennett, 735 F.2d at 862). Major Harrigill's decision does not fall within either of these definitions of policy. Even if Major Harrigill's decision was contrary to both the written policy and unwritten custom of the Adams County Sheriff's Department, there is still no county liability because the plaintiffs have not shown that Major Harrigill is a policymaker or that his decision was a policy attributable to Adams County.

The fact that Major Harrigill's decision did not conform to the written policy and unwritten custom of the department does not end the Court's analysis. "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur, 475 U.S. at 480 (emphasis added). However, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." Id. at 481. Rather, "[m]unicipal liability attaches only where the decisionmaker possesses final authority with respect to the action ordered." Id.

The Pembaur court illustrated by way of example. Id. at 483

12

n. 12. There, the Court distinguished between an official who has final policymaking authority and one who merely has discretion to make decisions under a municipality-established policy. Id. Where an actor is the official policymaker, or where the official policymaker has delegated final authority to the actor, the municipality may be held liable for an unconstitutional decision by the actor. Id. However, where the actor merely was exercising his discretion under a policy promulgated by the municipality, there is no municipal liability. Id. Applying this reasoning to the instant case, Major Harrigill's decision is not attributable to Adams County. Adams County has a clear policy regarding handling medical emergencies. This policy vested the discretion of calling an ambulance in both Major Harrigill and the County Physician. Major Harrigill's decision to transport Ashley to the jail, rather than contact an ambulance, was an exercise of that discretion, not a policy decision.

Third, the plaintiffs must show that Major Harrigill acted with "deliberate indifference." Id. at 457. "A showing of simple or even heightened negligence will not suffice." Id. (quoting Brown, 520 U.S. at 407). The Fifth Circuit Court of Appeals has applied this requirement strictly. See Gonzalez v. Yselta Indep. Sch. Dist., 996 F.2d 745 (5th Cir. 1993) (concluding that a school board who failed to remove a teacher accused of fondling students did not act with deliberate indifference); Stokes v. Bullins, 844

F.2d 269 (5th Cir. 1988)(determining that a county did not act with deliberate indifference when it failed to request a criminal background check for police applicants, when one of those applicants, who had a history of criminal violence, shot the plaintiff).  "In order for municipal liability to attach, plaintiffs must offer evidence of not simply a decision, but a 'decision by the city itself to violate the Constitution.'" Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998) (quoting Gonzalez, 996 F.2d at 759).  Applying this rigid standard to the instant case, the Court concludes that the plaintiffs also have failed to make a sufficient showing that Major Harrigill acted with deliberate indifference.

Fourth, the plaintiffs must establish "sufficient causation between the specific policy decision and the resulting constitutional injury." Id. at 457.  Proving causation "demands that the plaintiff show that the objectionable municipal policy was the 'moving force' behind the plaintiff's injury." Id. at 457 (quoting Brown, 520 U.S. at 408).  Therefore, meeting this element requires the plaintiffs to demonstrate that Major Harrigill's decision not to call an ambulance was the "moving force" behind her death.  The plaintiffs have offered the expert report of Dr. Stephen Huffman ("Dr. Huffman").[6]  Dr. Huffman's report indicates

---

[6] The defendants have filed a Motion to Strike Plaintiffs' Expert Designation of Stephen Huffman [**docket entry no. 49**].  The Court has not yet ruled on this motion.  In deciding whether to

that more timely medical treatment would have prevented Ashley's death.  Viewing this testimony in the light most favorable to the plaintiffs, the Court concludes that, even if the plaintiffs have created a factual issue as to whether Major Harrigill's decision was the moving force behind Ashley's death, the evidence still fails to establish that Major Harrigill's decision is attributable to Adams County.

Fifth, the plaintiffs must demonstrate an actual constitutional injury.  Id. at 457.  The Court recognizes some inconsistencies in the pleadings and depositions.  First, the ambulance service report indicates the presence of white powder in Ashley's mouth, (Pls.' Memo in Opposition of Defs.' Mot. Summ. J. Ex. G,) despite Officer Cox's testimony that he was unable to see any indication of cocaine injection upon inspection.  (Cox Dep. 27:22-28:23.)  Additionally, the ambulance report discloses that jail personnel advised medical personnel that "patient was arrested at hotel where deputies witnessed patient ingest an unknown amount of what was thought to be powder cocaine."  (Pls.' Memo in Opposition of Defs.' Mot. Summ. J. Ex. G.)  However, although the plaintiffs arguably have created a question of whether Ashley was denied needed medical treatment, the evidence still does not show that the injury attributable to the individual officers establishes

---

grant summary judgment, the Court has considered this expert report in the light most favorable to the nonmoving party, the plaintiffs.

liability on behalf of Adams County.

This is not a simple negligence case. Instead, this is a case in which the plaintiffs seek to hold a county liable for the acts of its employees. The rules are different; county liability cannot be established on the basis of respondeat superior. In conclusion, since the plaintiffs have failed to sufficiently establish each of the Brown requirements of municipal liability, summary judgment is proper.

## IV. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [**docket entry no. 51**] is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' Motion to Strike Designation of Expert - Dave Channell [**docket entry no. 47**] is **DENIED AS MOOT**, that defendants' Motion to Strike Designation of Expert - Stephen Huffman [**docket entry no. 49**] is **DENIED AS MOOT**, that defendants' Motion in Limine to Exclude Testimony of Willis Donald Lofton [**docket entry no. 62**] is **DENIED AS MOOT**, and that defendants' Motion in Limine Regarding Earned Income and Economic Loss [**docket entry no. 63**] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendants Adams County, Mississippi and Ronny Brown shall be **DISMISSED WITH PREJUDICE**.

A separate final judgment in compliance with Rule 58 of the Federal Rules of Civil Procedure shall be entered, dismissing this action with prejudice.

**SO ORDERED**, this the 5th day of September 2008.

                                       s/ David Bramlette

                                     **UNITED STATES DISTRICT JUDGE**